IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RHONDA R. NEWTSON,           )
                             )
        Plaintiff,           )
                             )
    v.                       )          NO. 13-3080
                             )
CAROLYN W. COLVIN,           )
COMMISSIONER OF SOCIAL       )
SECURITY,                    )
                             )
        Defendant.           )

OPINION

RICHARD MILLS, U.S. District Judge:

Rhonda Newtson seeks review of a decision, pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), denying her claim for Supplemental Social Security Income payments.

Both parties move for Summary Judgment.

Plaintiff prevails.

I. BACKGROUND

Plaintiff Rhonda Newtson was born in 1972 and was 33 years old on the date her application was filed.  She has an 11th grade education and no

past relevant work.

On February 3, 2006, the Plaintiff filed for supplemental security income alleging disability since September of 1998.  The application was denied initially and again upon reconsideration.

On November 15, 2006, the Plaintiff requested an administrative hearing.  A video conference was held before an administrative law judge ("ALJ") on April 13, 2009.  In a decision dated April 22, 2009, the ALJ found the Plaintiff not disabled under Section 1614(a)(3)(A) of the Social Security Act.  The Plaintiff requested that the Appeals Council review the decision.  The Appeals Council remanded the case for evaluation of new and material evidence and further development of the medical evidence of record.

On April 4, 2011, a second hearing was held before ALJ Shreese M. Wilson.  By decision dated April 18, 2011, ALJ Wilson found that Plaintiff was not disabled.  The Plaintiff requested review and, on May 18, 2012, the Appeals Council remanded the case for further development of the medical evidence of record and further evaluation of the Plaintiff's residual

functional capacity (RFC), her credibility and alleged pain symptoms and new and material evidence submitted to the Appeals Council.

On October 4, 2012, a video conference hearing was held before ALJ Wilson.  By decision dated October 26, 2012, ALJ Wilson found that Plaintiff was not disabled.  The Plaintiff requested review and, on January 23, 2013, the Appeals Council denied the Plaintiff's request for review. This was the final act of the Commissioner.

In the October 26, 2012 decision, ALJ Wilson found that Plaintiff had severe impairments of degenerative joint disease of the lumbar spine and cervical spine, asthma and depression, but retained the RFC to perform light work except that "she require[d] an alternate sit/stand once an hour for five minutes," she could not climb ladders, ropes or scaffolds, could occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch or crawl, occasionally reach overhead, needed to avoid concentrated exposure to extreme cold, heat, irritants such as dust fumes, odors, gases and poor ventilation, needed to avoid concentrated exposure to dangerous moving machinery and unprotected heights, and was limited to unskilled

jobs where reading was not integral to the successful completion of job tasks.  Based on this RFC, the ALJ found that Plaintiff could work as a small products assembler, collator operator and routing clerk.

The Plaintiff claims that the ALJ erred in the following ways: (1) the ALJ failed to follow the treating physician rule; (2) the ALJ failed to properly evaluate the Plaintiff's credibility; and (3) the ALJ relied on flawed vocational expert testimony.

## II. ANALYSIS

### A. Standard of review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Pursuant to section 205(g) of the Social Security Act, the ALJ's decision must be upheld if it is supported by substantial evidence.  See Moore v. Colvin, 743 F.3d 1118, 1120 (7th Cir. 2014).  "Substantial evidence" includes "such relevant evidence as a reasonable mind accepts as adequate to support a conclusion."  Id. (citations omitted).  The ALJ's decision must include a "logical bridge from the evidence to the conclusions

sufficient to allow . . . a reviewing court[] to assess the validity of the

agency's ultimate findings and afford [the Plaintiff] meaningful judicial

review." Id. This Court may not substitute its judgment for that of the ALJ

"by reconsidering facts, reweighing evidence, resolving conflicts in evidence

or deciding questions of credibility." Williams v. Apfel, 179 F.3d 1066,

1071-72 (7th Cir. 1999) (citation omitted).

<u>B. Legal Discussion</u>

(1)

The Plaintiff's treating physician, Daniel O'Brien, M.D., is a family

practitioner. Under the "treating physician rule," a treating physician's

opinion that is consistent with the record is generally entitled to

"controlling weight." See 20 C.F.R. § 404.1527(c)(2); Jelinek v. Astrue,

662 F.3d 805, 811 (7th Cir. 2011). Because some physicians may want to

assist a friend or patient in obtaining benefits, however, an ALJ "may

discount a treating physician's opinion if the opinion is inconsistent with

the opinion of a consulting physician or when the treating physician's

opinion is internally inconsistent, as long as he minimally articulates his

reasons for crediting or rejecting evidence of disability." Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotations and citations omitted).

Although the ultimate question of disability is an issue reserved to the Commissioner, see 20 C.F.R. § 416.927(e)(2), a treating physician's opinion that a claimant is disabled "must not be disregarded." See Social Security Ruling ("SSR") 96-5P (1996 WL 374183).

In a letter dated September 30, 2009, Dr. O'Brien reported treating the Plaintiff for diagnoses of cervical spinal cord compression secondary to herniated disc, cervical fusion at C5-6, and weakness in the left leg with spastic paraperesis. Clinical findings included spastic quadriparesis of the upper and lower hyper reflexes, increased deep tendon reflexes in the lower extremity and positive Hoffman in the extensor plantar. Dr. O'Brien cited MRIs of the cervical and lumbar spines and a NCV-EMG that also confirmed his diagnoses. He further reported that Plaintiff's symptoms of increased weakness in the left leg, increased reflexes, spastic clonus in the lower extremities, sensory loss in the left leg, and lower extremity cramping

6

pain had not been relieved despite treatment with a cervical fusion, extended physical therapy, and pain medications. It was Dr. O'Brien's opinion that Plaintiff could only stand/walk for a total of two hours during an eight-hour workday. The Plaintiff had limited range of motion in the neck which interfered with her ability to use her upper extremities and she experienced fatigue and increased symptoms when these activities were sustained. The Plaintiff's pain and fatigue were frequently severe enough to interfere with her attention and concentration.

Dr. O'Brien completed a Multiple Impairment Questionnaire on April 20, 2011. He diagnosed herniation in the C5-C6 nucleus pulposus, with resultant cervical myelopathy and spastic quadriparesis, leading to incontinence, weakness in the left lower extremity, and paresthesia. Positive clinical findings included antalgic gait favoring the left side, lower extremity weakness and increased muscle tone, increased reflexes in the knee and ankles and decreased sensation in the left leg.

It was Dr. O'Brien's opinion that in an eight-hour day, the Plaintiff could sit for four hours total, stand/walk for one hour total and that she

7

must get up and move around every two hours when sitting. She could frequently lift up to 20 pounds, occasionally carry up to 20 pounds and was moderately limited in the ability to use her upper extremities to grasp, turn and twist objects and use the arms for reaching, including overhead. The Plaintiff also required ready access to a restroom because of her incontinence.

In considering Dr. O'Brien's opinion, the ALJ stated as follows:

Dr. O'Brien completed a multiple impairment questionnaire dated July 11, 2007 and April 20, 2011. Dr. O'Brien referenced cervical MRI, lumbar MRI in support of his diagnoses. The undersigned initially notes that the latest MRI on July 25, 2006 revealed no focal disc herniations and no central canal stenosis. Dr. O'Brien did not indicate any limitations in the claimant's ability to sit, and noted she could stand/walk 1-2 hours in an 8-hour period. Dr. O'Brien did not indicate any limitations in claimant's ability to lift or carry weight. She had no noted limitations in manipulating or grasping objects. Dr. O'Brien noted the claimant could not keep her neck in a constant position; however, there is no notation of any limitation in range of motion of the neck. Although Dr. O'Brien concluded claimant could not perform full-time work activity, this is not supported by his assessment of claimant's postural limitations. The claimant was assessed as capable of dealing with moderate stress. Dr. O'Brien did not indicate the claimant would be absent from work because of impairments or treatments, which is inconsistent with his assessment that she could not sustain work activity. Although multiple medical notes from Dr.

8

O'Brien indicated [] the claimant was disabled by a neurological disorder and unable to seek employment, these opinions are given little weight for a number of reasons.  Initially, the undersigned notes these assessments are each written on a prescription pad, and are not accompanied by nor do they reference any functional capacity assessment that could support Dr. O'Brien's conclusions the claimant has been unable to seek employment.  Next, the undersigned notes the conclusions are vague as to a disabling "neurological disorder" and are not supported by any diagnoses of a severe physical impairment.  The claimant has only been recommended for conservative treatment by Dr. O'Brien and other treating physicians, not surgery.  Dr. O'Brien's own medical reports fail to reveal any significant clinical abnormalities or significant limitations in function that could support these conclusions.  Finally, the foregoing opinion of Dr. O'Brien, essentially precluding all work activity, is not supported by other objective evidence of record.

R. at 23 (internal citations omitted).

(2)

The ALJ stated that the limitations described by Dr. O'Brien in his Multiple Impairment Questionnaire dated April 20, 2011 and his narrative from September 30, 2009 were not supported by objective evidence.  The ALJ speculated that Dr. O'Brien may have based his opinions on the Plaintiff's limitations out of sympathy  or because she demanded such a report, instead of on appropriate medical evidence.

The Plaintiff notes that on multiple occasions, Dr. O'Brien wrote that his opinions were based on clinical and diagnostic evidence of: spastic quadriparesis, lower extremity hyperreflexia and increased deep tendon reflexes, positive Hoffman's sign, an antalgic gait favoring the left side, lower extremity weakness and increased muscle tone, decreased sensation in the left leg, cervical and lumbar MRIs and an EMG,

The Plaintiff asserts that the ALJ did not cite substantial evidence contradicting the opinions from Dr. O'Brien.  Accordingly, the Plaintiff contends those opinions are entitled to controlling weight.  See 20 C.F.R. § 416.927(c)(2) (the Commissioner must give controlling weight to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record"); SSR 96-2P (1996 WL 374188) (noting that a well-supported opinion from a treating source that is not contradicted by substantial evidence must be adopted by the ALJ).

The Plaintiff further contends that, even assuming Dr. O'Brien's opinions are not entitled to controlling weight, the opinions are "still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2P.  The Plaintiff claims that is the case here.  The Plaintiff states Dr. O'Brien treated her as often as she could afford to see him throughout the time frame.  Moreover, the nature of the treatment concerned the Plaintiff's disabling musculoskeletal impairments.  Additionally, the Plaintiff claims Dr. O'Brien provided extensive medical findings in support of his opinion. The Plaintiff contends that because those findings are consistent with the record as a whole, the ALJ had no basis to ignore Dr. O'Brien's clinical findings.

The Plaintiff claims that the ALJ's decision does not include any supporting evidence for the finding that she can perform light exertional work, as required by the Social Security Ruling:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC,

11

the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). The ALJ has a duty to examine all of the evidence in the record, see 20 C.F.R. § 404.1545(a)(3), and her decision must be adequately explained and supported by substantial evidence. See Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The failure to explain how the evidence supports each conclusion in the RFC assessment is sufficient to warrant reversal. See id. at 352.

The ALJ does not specify what evidence she uses to discount Dr. O'Brien's opinions. In addition to referring to "inconsistences in the record," the ALJ states very generally that although some evidence supports the Plaintiff's allegations, the "objective medical findings" do not. The ALJ does not explain her decision by discussing other medical evidence. Although Vittal Chapa, M.D., evaluated the Plaintiff at the request of the

Social Security Administration, the ALJ does not use the diagnoses or opinions of Dr. Chapa or any other medical source to reject Dr. O'Brien's findings.

Because the ALJ does not cite any specific medical or other evidence as to why Dr. O'Brien's opinions should be discounted, the Court must conclude that her decision is not supported by substantial evidence.

(3)

In discussing the Plaintiff's credibility and her RFC determination, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. at 18.  The ALJ purports to discredit the Plaintiff's testimony using familiar boilerplate language that the Seventh Circuit has criticized in recent years.  See Minnick v. Colvin, 775 F.3d 929,  936 (7th Cir. 2015); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013);  Bjornson v. Astrue,

671 F.3d 640, 644-45 (7th Cir. 2012).

The Court notes that the Social Security Administration's use of such meaningless boilerplate language is not enough by itself to warrant reversal. The use of such language is harmless if the ALJ provides additional reasons for her finding.  See Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012); Shideler v. Astrue, 688 F.3d 306, 311-12 (7th Cir. 2011).

In addition to the problems noted above with the ALJ's analysis, the Court finds that the ALJ's evaluation of the Plaintiffs credibility is flawed.

## III. CONCLUSION

For these reasons, the Court concludes that the ALJ's decision is not supported by substantial evidence.  The Court notes that Plaintiff requested that the decision of the Commissioner should be reversed for an award of benefits or, in the alternative, remanded for a new hearing and decision.

Because the record is unclear as to whether the Plaintiff qualifies as disabled, this cause will be remanded for a rehearing.

On remand, the ALJ shall properly evaluate the medical evidence, assess the Plaintiff's credibility and consider the testimony of the vocational

14

expert.

Ergo, the Motion of Plaintiff Rhonda Newtson for Summary Judgment [d/e 7] is ALLOWED.

The Motion of Defendant Commissioner of Social Security for Summary Judgment [d/e 11] is DENIED.

The Clerk will enter a Judgment reversing the Commissioner's decision and remanding the cause for a rehearing.

ENTER: March 3, 2016

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge

15